**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**CHRISTOPHER GOOLSBY,**

    **Plaintiff,**

vs.                                    Case No. 8:07-CV-244-T-EAJ

**MICHAEL J. ASTRUE
Commissioner of Social Security,**

    **Defendant.**
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the complete administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 10).

Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).[2]

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed an application for DIB and SSI on April 15, 2005, and in both applications, alleges disability beginning February 22, 2005. (T 51-53, 54-58)  Plaintiff claims he is disabled due to cervical disc disease, lumbar disc disease, gastroesophageal reflux disease, hypertension, peripheral vascular disease, cervical fusion, an anxiety disorder, and major depression.  (T 16-17, 51-53, 54-58, 81-93)  The ALJ held a hearing on Plaintiff's application for DIB and SSI on August 29, 2006. (T 480-99)  Thirty-nine (39) years old at the time of the hearing, Plaintiff has a high school education and past work experience as a form setter, yeast roll cutter, shuttle driver, money counter clerk, bus driver, security supervisor, packer, and color technician. (T 59-69, 485, 494-95).

In a decision dated September 21, 2006, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability.  (T 16)  The ALJ determined that although Plaintiff suffers from the severe impairments of cervical disc disease, lumbar disc disease,

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

2

gastroesophageal reflux disease, hypertension (controlled), possible peripheral vascular disease, and status post cervical fusion, as well as the non-severe impairments of anxiety, major depression and alcohol abuse, these impairments, whether considered singly or in combination, do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (T 16, 17)

Further, the ALJ found that the Plaintiff's allegations regarding the severity of his impairments, specifically, "[t]he claimant's statements regarding the intensity, persistence, and limiting effects of these symptoms," are not entirely credible. (T 22) The ALJ concluded that Plaintiff has the following residual functional capacity ("RFC") for sedentary work:[3]

> The claimant can occasionally lift/carry 10 pounds and frequently lift/carry 5 pounds; he can sit 6 hours in an 8 hour workday; stand/walk 2 hours in an 8 hour workday; occasionally reach overhead; occasionally push and pull with the upper extremities; he is to avoid climbing ladders, ropes, scaffolds kneeling and crawling; he can occasionally climb stairs/ramps, balance, stoop and crouch and no operation of commercial vehicles due to medication.

(T 17)

The ALJ relied on the testimony of a vocational expert ("VE") who answered hypothetical questions based on these limitations, and the ALJ concluded that Plaintiff's severe impairments prevent him from performing his past relevant work. (T 23, 24) However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making the vocational adjustment to such occupations as a security surveillance monitor or a telephone solicitor.

---

[3] Sedentary work, defined at 20 C.F.R. §§ 404.1567(a), 416.967(a), involves the "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

(T 25)  The ALJ further found that these types of jobs exist in significant numbers in the national economy.  (T 24-25)  Accordingly, the ALJ determined that a finding of "not disabled" was appropriate under Medical-Vocational Rule 201.27 and 201.28, Table No. 1, Appendix 2, Subpart, P, Regulations No. 4, followed by the testimony obtained from the VE.  (T 24, 25)

On January 18, 2007, the Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner.  (T 4-6)  Plaintiff filed a timely petition for judicial review and has exhausted all administrative remedies.  Therefore, the Commissioner's decision is ripe for review under the Act.

Most of the medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff raises one issue on appeal: the Appeals Council committed error by failing to remand to the ALJ based on new evidence submitted to the Appeals Council.   (Dkt. 18 at 6) Specifically, Plaintiff argues the Appeals Council failed to consider new and material medical evidence, which, if considered, would have potentially changed the decision.

Plaintiff states that when the Appeals Council received the request for reconsideration of the ALJ's decision, the Appeals Council also received documents containing the opinions of two of Plaintiff's treating physicians.  (T 474-79) Plaintiff argues that these documents should have triggered a remand to the ALJ because the medical opinions contained in the documents were not cumulative, they were relevant to the period prior to the ALJ's decision, and these medical opinions were previously unavailable.

This court has two different possible methods of review under Section 405(g), which allows

4

a district court to remand an application for DIB or SSI benefits to the Commissioner: the first method is a "sentence four" remand and the second is a "sentence six" remand. See 42 U.S.C.§ 405(g).[4] The Eleventh Circuit recently clarified the standards for a "sentence six" method of review in <u>Ingram v. Comm'r of Soc. Sec. Admin.</u>, 496 F.3d 1253 (11th Cir. 2007). "Sentence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously submitted to the Appeals Council." <u>Ingram</u>, 496 F.3d at 1269.

A remand to the Commissioner is proper under sentence six only when new and material evidence that was not incorporated into the administrative record comes to the district court's attention. Therefore, the district court does not have the power to remand under "sentence six" if the new evidence submitted has been considered by the Appeals Council and is part of the administrative record. <u>Id.</u>

In this case, the Appeals Council received two Physical Capacities Evaluations ("PCE") from treating physicians, Imtiaz Hossain, M.D. ("Dr. Hossain") and Norman Urich, D.O. ("Dr. Urich"), which became part of the record as Exhibits AC-1 and AC-2 respectively.[5] (T 474-76; 477-79) In

---

[4] The "fourth sentence" of Section 405(g) gives district courts "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The "sixth sentence" of Section 405(g) gives district courts the ability to remand an application for DIB or SSI benefits to the Commissioner of Social Security when there is a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

[5] Plaintiff cites in his Memorandum in Opposition to the Commissioner's Decision reasons for the submission of evidence after the ALJ's decision. Among these reasons given are Plaintiff's limited resources, the physicians' requiring payment for medical evidence review, and Plaintiff's non-attorney representative's view that paying for the physical capacities evaluations would be an unnecessary expense for cumulative evidence. (Dkt. 18 at 14)

denying Plaintiff's request for review, the Appeals Council stated that these PCEs were considered as part of Plaintiff's request and found that the additional information did not provide a basis for changing the ALJ's decision. (T 4-5)

As this evidence was before the Appeals Council, remand under sentence six is inappropriate. However, because Plaintiff argues that the Appeals Council did not conduct a meaningful review of his case before affirming the ALJ's decision, the PCEs of Dr. Hossain and Dr. Urich submitted to the Appeals Council may be the basis for a "sentence four" remand, but not a "sentence six" remand. See Ingram, 496 F.3d at 1269.

Under Ingram, under the "sentence four" method, the court reviews whether the Appeals Council's decision to deny benefits is supported by substantial evidence in the record as a whole, including the PCEs provided by Dr. Hossain and Dr. Urich. See Ingram, 496 F.3d at 1269. The undersigned finds that the administrative record as a whole does contain substantial evidence to support the denial of benefits.

Both Drs. Hossain and Urich indicate that the PCEs were based on Plaintiff's medical records and past medical history which the ALJ thoroughly reviewed before making a finding of non-disability. The record before the ALJ contained medical records and treatment notes regarding Plaintiff from both Dr. Hossain and Dr. Urich.

Plaintiff began seeing Dr. Urich on September 5, 2003 because of chronic joint pain in his low back; at the time he was taking Vicodin for chronic pain. (T 169) Dr. Urich noted that Plaintiff experienced a restricted range of motion and that Plaintiff's neck movements were slightly less than normal. (Id.) Plaintiff saw Dr. Urich approximately every three (3) weeks through the most recent record of July 31, 2006. (T 152-88; 336-43; 448-61) Although Dr. Urich referred Plaintiff to

several other physicians during his course of treatment, as well as emergency room physicians, Plaintiff's treatment remained relatively the same for over three years; a prescription for Vicodin three (3) times per day along with Robaxin as a muscle relaxant. (T 152-88; 336-43; 448-61) On two different occasions, October 31, 2005 and April 29, 2005, Dr. Urich suggested to Plaintiff that he attempt treatment from a pain management professional through Medicaid. (T 158, 343) Plaintiff informed Dr. Urich on May 25, 2006 that he had an appointment with a pain management doctor the following day. (T 449)

Dr. Urich's treatment notes indicate concerns regarding the source of Plaintiff's pain. On May 27, 2005, he states "[he] claims he has some psychological issues of which he is withdrawn in his room alone many times. There is a possibility of mental depression." (T 156) After noting this observation, Dr. Urich indicates that Plaintiff is ambulatory. (T 156) On July 1, 2005, Dr. Urich indicates that "the patient's joint movement appears to be fairly good." (T 156) On September 1, 2005, Dr. Urich notes that Plaintiff's complaints of continued lethargy, tiredness, and inability to do things appeared "to be mental in part." (T 152) On April 27, 2006, Dr. Urich once again opined that Plaintiff suffers from depression; Plaintiff described his life as watching TV, sleeping, and also working on the computer. (T 449) Dr. Urich's treatment notes for May 25, 2006 (Plaintiff's last visit prior to seeing the pain management physician) indicated that Plaintiff was currently wearing a back brace to give him stability during ambulation and was taking Vicodin three times per day, although it was ineffective. (T 449-50)

Plaintiff began seeing Dr. Hossain, a pain management physician, on May 26, 2006. (T 424) Dr. Hossain noted that Plaintiff's pain as a result of an automobile injury was mostly treated with narcotics and he indicated that Plaintiff's back pain was more intense than his neck, shoulder and

leg pain. (T 424) Dr. Hossain stated "I do not think chronic narcotic treatment will solve his problem, rather he already is showing some amount of tolerance to this pain medication." (T 426) Dr. Hossain also noted that Plaintiff "appeared to be somewhat disappointed with this recommendation." (T 426) On June 23, 2006, after Plaintiff received his first spinal injection from Dr. Hossain, he felt some pain improvement. (T 419-20) Because of some residual pain, Dr. Hossain gave Plaintiff another injection. (T 419-20) On July 7, 2006, Plaintiff reported to Hossain that he experienced overall significant improvement. (T 416-18) On his last treatment note dated July 21, 2006, Dr. Hossain indicated that Plaintiff reported his lower back was feeling significantly better and that although the pain was not gone yet, it could be tolerated, and Plaintiff requested further treatment for the neck area. (T 414) In addition, Dr. Hossain stated that Plaintiff's lower back requires no additional treatment; he gave Plaintiff a sample of Zoloft to help him cope with pain and depression. (T 414)

Plaintiff visited Dr. Urich on June 30, 2006, July 20, 2006, and July 31, 2006. (T 451-52) Dr. Urich noted on two occasions that Plaintiff was experiencing shortness of breath and chest discomfort. (T 451, 452) On July 20, 2006, Dr. Urich noted "[t]he patient is still constantly nervous taking his Valium twice a day and has chronic pain of which he takes his Vicodin three times per day." (T 451)

The ALJ detailed in her opinion diagnoses and notes provided by these physicians. The ALJ specifically considered both Dr. Hossain's and Dr. Urich's opinions and treatment notes in evaluating Plaintiff's RFC. In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to medical opinions and her reasons for doing so. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

The ALJ's decision discusses Dr. Hossain's and Dr. Urich's evaluations and other persuasive evidence that Plaintiff was capable of performing restricted light work. (T 18-22) In August of 2005, Plaintiff saw a neurosurgeon following a motor vehicle accident who indicated that Plaintiff was capable of performing a wide range of light work. (T 20,194) In addition, in June of 2006, Plaintiff saw a different neurosurgeon who advised Plaintiff that he could not recommend surgery without proving that all non-surgical therapies would fail. (T 22-23, 430) Plaintiff informed the neurosurgeon that he did not want to proceed with injection therapy. (T 430) One month later, in July of 2006, Dr. Hossain stated that no additional treatment was needed for Plaintiff's lower back area, but that continued injections in the cervical and shoulder area were recommended. (T 23, 414)

Dr. Urich referred Plaintiff to H. Bushnell Clarke, M.D. ("Dr. Clarke") on April 19, 2005 for evaluation of lower back pain. (T 126-27) Upon examination, Dr. Clarke found that Plaintiff was in no acute distress and that Plaintiff had back pain but denied radicular pain in the legs. (T 127) Dr. Clarke determined that Plaintiff would not benefit from surgery as he did not appear to be symptomatic at that point and recommended more conservative treatment. (Id.) Dr. Clarke stated that Plaintiff could return to his full-time employment as a bus driver. (Id.)

The ALJ also took into consideration the opinions of state agency physicians who evaluated Plaintiff's medical records. (T 23) These physicians found that Plaintiff has the RFC to lift and carry 20 pounds occasionally, and 10 pounds frequently, with the ability to sit, stand, or walk 6 hours in an 8 hour workday. (T 131-38) Considering this evidence and based on Plaintiff's medical history, the ALJ determined that light work may be excessive for Plaintiff and determined that Plaintiff had the RFC for sedentary work. (T 23)

Additionally, The ALJ based her ultimate finding of "not disabled" on the testimony of a

VE, whose findings are discussed above.

Contrary to Plaintiff's argument, the new PCE forms submitted by Drs. Hossain and Urich are unsupported by the record and treatment notes of these physicians.

The PCE completed by Dr. Hossain provides an overall medical diagnosis that is somewhat consistent with his treatment notes: herniated disc in cervical and lumbar spine, chronic pain, and chronic muscle spasms. (T 476) However, there are significant restrictions indicated on the PCE that are not consistent with his treatment notes which showed positive improvements. Dr. Hossain indicates, for example, that Plaintiff suffers from chronic headaches, can only walk 10 minutes without interruption, can only work four (4) to six (6) hours without interruption, and should be restricted against chemicals, dust or fumes. (T 474-75) However, none of Dr. Hossain's treatment notes indicate work or physical restrictions of any kind, nor are there notes of any discussions with Plaintiff regarding physical restrictions. (T 414-26)

Similarly, Dr. Urich indicates on his PCE that: (1) Plaintiff can only stand and walk 20 minutes at a time, (2) Plaintiff can stand and walk for an hour in an 8-hour day, (3) Plaintiff can only sit for an hour at a time, and (4) Plaintiff can sit for two hours in an 8-hour day. (T 477) These conclusions are not supported by Dr. Urich's observations and treatment notes. (T 152-188, 336-343, 48-461)

In addition, it appears that Dr. Urich's and Dr. Hossain's assessments conflict. Dr. Hossain states that Plaintiff cannot push, pull or do fine finger action, but he can sit up to six (6) hours per eight (8) hour workday. (T 474-75) In contrast, Dr. Urich states that Plaintiff can push, pull and do fine finger action, but can only sit up to two (2) hours in an eight (8) hour workday. (T 477-78) Therefore, the PCE's of both Dr. Hossain and Dr. Urich are unsupported by both Dr. Hossain's and

Dr. Urich's medical records.

Accordingly, the undersigned finds that the new evidence presented to the Appeals Council does not render the denial of benefits erroneous.

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is therefore affirmed.

Accordingly, and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)     the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)     the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. § § 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida this 14th day of March, 2008.

_____
ELIZABETH A JENKINS
United States Magistrate Judge

11